### WEIL v. STEINERS, Inc.

(District Court, E. D. New York. May 28, 1923.)

Patents ⚙⇒328—No. 1,216,637, for art of producing lace effects, held valid, but not infringed.

> The Weil patent, No. 1,216,637, for art of producing lace effects, claim 1, for the method, and claim 2, for the manufactured article, *held* valid, but, as limited by the prior art, not infringed.

In Equity. Suit by Henry Weil against Steiners, Inc. Decree for defendant, and complaint dismissed.

Lewis J. Doolittle, of New York City, for plaintiff.
Briesen & Schrenk, of New York City, for defendant.

CAMPBELL, District Judge. This is a suit in equity for the infringement of letters patent No. 1,216,637, issued by the United States Patent Office to H. Weil, for "art of producing lace effects," and dated February 20, 1917. The answer is twofold: Invalidity of the patent, and noninfringement.

The plaintiff bases this suit upon claims 1 and 2 (both claims of the patent), which read as follows:

"1. The art or method of producing lace insertion effects, which consists in providing upon a piece of material a background representing an opening cut therein and adapted to be embroidered over from margin to margin and in different directions, so as to produce inclosed areas, placing upon said background a design for lace effect, said design and background being of contrasting colors adapted to give the appearance of a lace insertion in an opening in said piece of material, and providing a margin to the background for a substantial distance laterally of a contrasting color from the background proper.

"2. An article of manufacture comprising a piece of material having upon a portion thereof a background representing an opening cut therein, a design for lace effects upon said background, said design and background being of contrasting colors adapted to give the appearance of a lace insertion in an opening in said piece of material, the margin to the background for a substantial distance laterally being of a contrasting color from the background proper and the background adapted to be embroidered over from margin to margin and in different directions, so as to produce inclosed areas."

---
⚙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Plaintiff contends for a broad construction of the claims of his patent, claim 1 of which is for a method, and claim 2 for the article; but I do not believe he is entitled thereto: On the contrary, it seems to me that they should be carefully limited, and this was undoubtedly the opinion of the patent examiner. See extract from file wrapper of the patent in suit (Defendant's Exhibit A). The object which the patentee sought to accomplish was clearly set out in his application (patent in suit, page 1, lines 9–14):

"The object being to provide a method by means of which the effect of lace insertion in a piece of material may be obtained without inserting a real lace medallion or lace insertion in a cut-out space in the material in the usual manner."

The object of the invention was also clearly set out in his application (patent in suit, page 1, lines 15–20), which reads as follows:

"The object of the present invention is to enable the manufacturer of art embroideries to produce an article at reduced cost, which will closely resemble and produce substantially the same transparent effect as a real lace insertion."

In order to accomplish this purpose, two points were clearly set forth: First, that there was to be a permanently tinted background; second, that there were to be open squares, leaving visible at the center of each square a portion of the permanently tinted background, and the patent is so limited.

That the tinting of the background was to be permanent is shown by the application, which provided for the tinted background, the stamping or printing of the design thereon, and the use of the design stamped or printed on the background, either as a guide for the embroidery or for the lace effect without embroidering. See patent in suit, page 1, lines 29 to 49, which read as follows:

"In carrying out the invention I provide a dark background, preferably black, in or on the desired material, a portion of which is shown at 1 in the drawings, such background occupying the space or spaces which would ordinarily be cut out to receive the lace medallion or insertion. This background may be of contrasting color from that of the material itself or may be of the same color. This background, which is indicated by the reference character 2 in the drawings, is adapted to carry the design, indicated at 3, representing the lace effect, which may be stamped or printed thereon. This printed design may form a guide for working or embroidering the design upon the material, a small portion of such worked or embroidered design being shown at 4 in Fig. 3, or the stamped or printed design for lace effect may be used upon the background without embroidering."

See claim 1 of the patent in suit, lines 80–82, which read as follows:

"Providing upon a piece of material a background representing an opening cut therein."

See claim 2 of the patent in suit, lines 95–97, which read as follows:

"Having upon a portion thereof a background representing an opening cut therein."

That the squares were to be open plainly appears. See claim 1 of the patent in suit, lines 83–85, which read as follows:

"To be embroidered over from margin to margin and in different directions, so as to produce inclosed areas."

And again, in claim 2 of the patent in suit, page 1, lines 105–107, which read as follows:

"Adapted to be embroidered over from margin to margin, and in different directions, so as to produce inclosed areas."

And finally this appears from the drawing attached to said patent in suit. The printed design was to be placed on the background in permanent colors, and not colors that could be washed off, because it was provided that:

"The stamped or printed design for lace effect may be used upon the background without embroidering." Application for patent in suit, page 1, lines 47–49.

The construction which I have placed on the patent in suit is exactly that which the plaintiff placed upon it at the time it was issued and for some time thereafter, as is shown by Plaintiff's Exhibits 5, 9, and 14, which, or others of like nature, were the ones which he submitted to his patent attorney when the patent in suit was applied for.

The plaintiff in his testimony described how he first tinted the background, and then upon said background applied, in a lighter color, the design to be followed by the embroidery threads of the worker, and this is exactly what was shown by Plaintiff's Exhibits 5, 9, and 14.

Plaintiff could not have obtained a patent which provided for the embroidery of the squares—by that I mean the center of the squares—because, as appears by the testimony of Miss Whiting, the embroidering of such squares, in connection with the production of lace effects, was standard practice antedating the French Revolution.

Four patents, all issued by the United States Patent Office, were offered in evidence to show the prior art, as follows:

No. 13,542, issued to Hieronymus, dated January 23, 1883, shows the use of four parallel lines to form squares on fabric for decorative purposes, and that such lines may be applied to the fabric by the use of color. The same effect is produced by the squares formed by three parallel lines used by the defendant to form squares as the four lines used in the Hieronymus patent, and it is their relative arrangement that produces the figure, whether it be a face or the figure of a cupid.

No. 320,409, issued to Sochefsky, dated June 16, 1885, shows the tinting of fabrics and the placing of designs thereon.

No. 601,595, issued to Smith, dated March 29, 1898, shows the creation of designs formed of squares embroidered over by cross-stitching, instead of parallel stitching, and the stamping of marked patterns on fabrics.

No. 1,030,159, issued to Bosshardt, dated June 18, 1912, shows a permanently tinted area, the edges of the area being embroidered over by step stitches, or any other suitable outlining stitch common in embroidery work. Page 2, lines 100–103.

The lateral parts of the background 2 of the patent in suit and in the Bosshardt patent, supra, are of triangular formation, and the effect produced, if the Bosshardt triangles are relatively so positioned on a fabric as to form a design of a face or figure (or the background for such a design) will be exactly that produced by the patent in suit.

In my opinion, the specification and claims of the patent in suit and the prior art limit and restrict the patent in suit to that which it seems to me the patentee claimed, and for which he was allowed the patent, and that is the permanently tinted background and upon that background a lace design, which will produce in the embroidery thread the outlines or forming of a square figure.

None of these elements appear in the defendant's commercial article, because in that the color is not permanent, and is intended only as a guide for the one who does the embroidering, and will wash off, and the squares are not outlined or the areas inclosed, but the centers of the squares are embroidered by the embroidering of the parallel lines forming the squares. I can therefore see no infringement by the defendant.

Plaintiff in his later productions (Plaintiff's Exhibits 7 and 11) has not followed the claims of the patent, but has reverted to the standard prior art procedure. Defendant has followed the standard prior art procedure, and it would not be surprising to find the later productions of plaintiff (Plaintiff's Exhibits 7 and 11) and the productions of the defendant (Plaintiff's Exhibits 2, 3, and 4) similar, if not exactly alike; but plaintiff cannot claim infringement by the defendant unless it be shown that the production of the defendant infringes the patent in suit, and not the commercial article now produced by the plaintiff.

Defendant has followed the prior art, and has not infringed the patent in suit, as I have construed the same. I therefore find that claims 1 and 2 of the patent in suit, as I have construed and limited the same, are valid, and I further find that the defendant has not infringed the plaintiff's patent in suit.

Judgment is therefore granted to the defendant, dismissing the plaintiff's complaint, with costs.